**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13–cv–03436–RM

BRENDA LEE PHILLIPS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

    This matter is before the Court on Plaintiff Brenda Lee Phillips's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)  Plaintiff challenges the final decision of Defendant, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") respectively under Titles II and XVI of the Social Security Act ("Act").  The Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

    The Commissioner provided the Court with the administrative record.  (ECF Nos. 8; 8-1; 8-2; 8-3; 8-4; 8-5; 8-6; 8-7; 8-8; 8-9; 8-10; 8-11.)  The parties have fully briefed the matter and it is ripe for adjudication.  (ECF Nos. 13; 14; 15.)

    For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's DIB and SSI applications and remands for further proceedings consistent with this Order.

I.  BACKGROUND

Plaintiff applied for DIB and SSI in November 2011, alleging she was disabled as of December 24, 2009[1], due to the following conditions that limit her ability to work: back/lumbar impairment, sciatic nerve, right side pain, depression, and insomnia. (Admin. R. ("Tr.") at 213-14, 220, 245.) After Plaintiff's applications were initially denied, Plaintiff requested a hearing before an ALJ. (Tr. 151-54, 66-116.) The ALJ denied Plaintiff's applications. (Tr. 66-87.) Plaintiff requested review of the ALJ's decision and, in October 2013, the Appeals Council denied such review. (Tr. 1-6, 310-17.) Plaintiff timely requested judicial review before the Court.

A.  **Background and Relevant Medical Evidence**

Plaintiff was born in 1964. (Tr. 213.) Plaintiff has a high school education. (Tr. 246.) Plaintiff's past relevant work history includes managing a Bennigan's Restaurant and being a server at a restaurant. (Tr. 246, 261-70.)

Plaintiff claims she became disabled on October 18, 2011 due to a combination of physical and mental health impairments. (*See* Tr. 213-14.) Plaintiff has an extensive medical history.

1.  Spine Team Texas's Treatment of Plaintiff

Spine Team Texas treated Plaintiff from 2007 to 2013. (Tr. 419, 55) Providers[2] at Spine Team Texas included Amit Darnule, M.D. (Tr. 403-07), Michael Garcia, M.D. (Tr. 430-34), Shelley Wallace, NP (Tr. 569-575), Leonard K. Kibuule, M.D. (Tr. 576-581), Susan Scott, NP

---

[1] Plaintiff had a prior claim for disability benefits that was administratively denied on October 17, 2011. (Tr. 69, 240-41.) Under principles of *res judicata*, the ALJ determined that the alleged onset date was then October 18, 2011. (Tr. 69 (citing 20 C.F.R. § 404.957(c)(1)).) Plaintiff takes no issue with this determination. (*See generally* Dkt.) The Court refers to this administratively determined alleged onset date.
[2] The Court notes that not all of these individuals are acceptable medical sources. *See* 20 C.F.R. § 404.1513(a).

(Tr. 581), Cortland Miller, M.D. (Tr. 582-588), Jennifer L. Donnelly-Straach, M.D. (Tr. 626-631), Ryan Reeves, M.D. (Tr. 639-644), and Dwayne L. Collins (Tr. 27-32).

Spine Team Texas attempted to treat Plaintiff's back conditions, including her back pain. Plaintiff's back conditions include chronic low back pain, lumbar spondylosis, lumbar degenerative disc disease, disturbed skin sensation in the right lower extremity, cervical spondylosis (Tr. 435) as well as hip pain (Tr. 54). Medical modalities used to treat Plaintiff's back pain were with steroid injections and a variety of medications. (Tr. 437, 52-53.) Additionally, Spine Team Texas prescribed Plaintiff a shower chair (Tr. 52) and a cane (Tr. 53, 650) for assistance with her gait due to lumbar radiculopathy. Spine Team Texas determined that Plaintiff's depression interfered with her providers' ability to treat her back pain. (Tr. 126.)

Diagnostic imaging revealed degenerative changes in Plaintiff's spine and bursitis in Plaintiff's pelvis. (Tr. 318-25, 411, 632, 664.)

2. Emergency Room Visits

In February 2012, the North Hills Hospital-Emergency Department treated Plaintiff for a headache. (Tr. 387-395.) Again in April 2012, the North Hills Hospital-Emergency Department treated Plaintiff for a syncopal episode and a migraine headache. (Tr. 380-86.) Plaintiff reported being unconscious as a result of the headache in April 2012. (Tr. 380.)

3. Kane Hall Barry Neurology's Treatment of Plaintiff

Beginning in April 2012, Kane Hall Barry Neurology treated Plaintiff for transformed migraines and severe non-migraine headaches. (Tr. 528-567, 709-713.) Individuals that examined or treated Plaintiff at Kane Hall Barry Neurology include Bobbie Richardson, RN (Tr. 529-30), Tracy Spielbauer, RN (Tr. 531-32), Bhagya Boggaram, M.D. (Tr. 533-37, 709-13)[3],

---

[3] The Court recognizes that the ALJ determined Dr. Boggaram not to be a treating physician within the scope of the Act. (Tr. 78.) The Court recognizes that Plaintiff raises this as one of the ALJ's errors. (*See* ECF No. 13.) For

Rebecca Izquierdo, FNP (Tr. 540-44), Susan Imke, FNP (Tr. 549-52), and Scott Hall, M.D. (Tr. 553-59). Plaintiff's treatment included Imitrex, TPM, Topamax, Cambia, and Depakote. (Tr. 567, 564.) Further, Plaintiff's treatment included intravenous injections of her medications. (Tr. 560.) Plaintiff also sought botox as a treatment for her migraines. (Tr. 533-36.)

On March 7, 2013, Dr. Boggaram provided an opinion as to Plaintiff's residual functional capacity as it relates to her headaches. (Tr. 709-13.) Dr. Boggaram opined that Plaintiff's intractable migraines, which had lasted or were expected to last at least twelve months, would cause her to take unscheduled breaks during an eight hour workday during which she would need to lie down or sit quietly for several hours at a time. (Tr. 709-13.)

4. Daniel Jackson Jr.'s Treatment of Plaintiff

Beginning in January 2012, Daniel Jackson, Jr., Ph.D. treated Plaintiff for depression. (Tr. 326-30, 596-624.) Dr. Jackson diagnosed Plaintiff with depression and chronic pain. (Tr. 622.)

5. James Manuel's Evaluation of Plaintiff

James Manuel, Psy.D., provided an independent psychological examination of Plaintiff. (Tr. 331-37.) Dr. Manuel found that Plaintiff suffers from a disturbance in mood, which was then characterized as a depressed mood. (Tr. 334, 335.) Further, Dr. Manuel found that Plaintiff suffers from anxiety. (Tr. 334.) Dr. Manuel also found that Plaintiff experienced some mild cognitive impairment. (Tr. 334.)

Dr. Manuel opined that Plaintiff was "not currently psychologically capable of working without significant interference from her psychological symptoms, particularly her depressive symptoms." (Tr. 335.)

---

purposes of the Court's resolution of this matter, it does not matter whether Dr. Boggaram is or is not a treating physician within the meaning of the Act.

      6.      <u>Cathal Grant's Treatment of Plaintiff</u>

Cathal Grant, M.D., treated Plaintiff as her psychiatrist[4]. (Tr. 482-511.) Medications were prescribed to treat Plaintiff's mental health conditions. (Tr. 486, 491, 496, 498.) Dr. Grant diagnosed Plaintiff as suffering from depression and migraines. (Tr. 509.)

      7.      <u>Family Healthcare Associate's Treatment of Plaintiff</u>

Hieu T. Vu, M.D. treated Plaintiff as her primary care physician. (Tr. 441-478.)

      8.      <u>Texas's State Agency Physicians' Evaluation of Plaintiff based upon Incomplete Medical Records</u>

On March 5, 2012, Mark Boulous, M.D., completed a psychiatric review of Plaintiff. (Tr. 352-365.) Dr. Boulous opined that Plaintiff suffers from depression and anxiety. (Tr. 352, 355, 357.) Dr. Boulous opined that Plaintiff has no marked or extreme functional limitations. (Tr. 362.) Dr. Boulous completed a mental residual functional capacity assessment. (Tr. 374-377.) Dr. Boulous did not find Plaintiff to suffer from any marked categories in terms of her mental abilities. (Tr. 374-77.) Dr. Boulous opined that Plaintiff's alleged mental limitations are not fully supported by the evidence on record. (Tr. 376.)

On March 5, 2012, Frederick Cremona, M.D., completed a physical residual functional capacity assessment. (Tr. 366-373.) Dr. Cremona opined that Plaintiff could occasionally lift and/or carry no more than 20 pounds. (Tr. 367.) Dr. Cremona opined that Plaintiff could frequently lift and/or carry no more than 10 pounds. (Tr. 367.) Dr. Cremona opined that Plaintiff could stand and/or walk with normal breaks for no more than 6 hours in an 8-hour workday. (Tr. 367.) Dr. Cremona opined that Plaintiff could sit with normal breaks for no more than 6 hours in an 8-hour workday. (Tr. 367.) Dr. Cremona opined that Plaintiff could push and/or pull an unlimited amount other than as shown for lift and/or carry. (Tr. 367.) Further, Dr.

---

[4] The Court notes that it appears that several individuals signed assessment notes while Plaintiff was being treated by Dr. Grant. (*See* Tr. 482-505.) It is not clear to the Court who these individuals were.

Cremona assessed Plaintiff with several postural limitations. (Tr. 368.) Dr. Cremona found that Plaintiff's allegations of disability are partially credible. (Tr. 373.)

         9.     <u>Plaintiff's Testimony</u>

Plaintiff completed a function report. (Tr. 281-290.) Plaintiff testified that as a result of her migraines she would become unconscious and fall. (Tr. 99.) Plaintiff's testimony regarding her daily activities consisted of sleeping, sitting, watching television, and trying to do chores. (Tr. 105.) Chores consist of washing clothes, watering plants, and cleaning. (Tr. 107.)

    **B.**     **The ALJ's Decision**

On April 11, 2013, ALJ Herbert J. Green issued his decision at issue in this matter denying Plaintiff DIB and SSI. (Tr. 66-87.) In reaching his decision, ALJ Green followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 69-87.) ALJ Green found that Plaintiff has met the disability insured status requirements of the Act and has not engaged in substantial gainful activity on and after October 18, 2011, the alleged onset date. (Tr. 70.) ALJ Green found that Plaintiff has the following severe impairments: degenerative disk disease, degenerative joint disease of the right hip, migraine headaches with complaints of syncopal episodes, obesity, and diagnosed depression and anxiety with a reported history of alcohol abuse. (Tr. 70.) ALJ Green found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations. (Tr. 70-80.) ALJ Green found Plaintiff's residual capacity ("RFC") to be as follows:

> to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of light work activity as follows: which affords the opportunity to alternate between sitting and standing at the worker's option; which does not entail climbing, crawling, kneeling or squatting; which only occasionally entails stooping and crouching; which does not entail working at heights, around dangerous machinery or driving on the job; and which can be performed by a

> person having the ability to remember and carry out detailed, non-complex instructions, the ability to make decisions, the ability to attend and concentrate for extended periods, the ability to accept instructions, and the ability to respond appropriate to changes in a routine work setting.

(Tr. 83-84.) Further, ALJ Green defined "light work activity involves the lifting of no more than 20 pounds at a time with the frequent lifting of up to 10 pounds, and standing and walking, off and on, for a total of 6 hours out of an 8-hour workday." (Tr. 83.) ALJ Green found that Plaintiff has past relevant work but that she is unable to perform such work. (Tr. 84.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Green's functional capacity determination and in consideration of Plaintiff's age and education, ALJ Green found that Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 85-86.) These jobs include small parts assembler, cashier, and small products assembler. (Tr. 85.)

Therefore, ALJ Green concluded that Plaintiff was not disabled. (Tr. 86.)

### C.     Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 64-65.) On October 24, 2013, the Appeals Council denied Plaintiff's appeal. (Tr. 1-6.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II.     LEGAL STANDARDS[5]

### A.     Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.

---

[5] Many C.F.R. citations are to part 404—which addresses DIB claims. All cited regulations have parallel citations in part 416—which addresses SSI claims.

*Id*.  "It requires more than a scintilla, but less than preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.* at 479-480 (citations omitted).  This duty exists even when the claimant is represented by counsel.  *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B.     Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act.  42 U.S.C. §§ 416(i),

423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act.  42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability.  *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii).  Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. at §§ 404.1520(d),

416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step. Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

## III.   ANALYSIS

In a sixty-six page opening brief[6], Plaintiff raises numerous issues for the Court's consideration, including that: (1) the ALJ pre-determined Plaintiff's claim or otherwise denied Plaintiff a full, fair, and impartial determination (ECF No. 13 at 48-53); (2) no evidence supports the ALJ's exertional RFC determination (ECF No. 13 at 53-58); (3) the ALJ failed to apply the treating source rule (ECF No. 13 at 58-60); (4) the ALJ failed to consider, in combination, Plaintiff's severe impairments (ECF No. 13 at 61); (5) the ALJ erred in his credibility determination (ECF No. 13 at 61-67); (6) the ALJ erred in determining that Plaintiff had

---

[6] While the Court recognizes the need for zealous advocacy, the Court has concerns with the bombastic and vitriolic language used in Plaintiff's opening and reply briefs. The Court finds that the following statements, but without limitation, do not significantly advance the material issues raised in Plaintiff's appeal: (1) Plaintiff's hearing was an "essential waste of time" (ECF No. 13 at 49); (2) the ALJ "abus[ed] Plaintiff" (ECF No. 44 at 52); (3) the "Defendant's authority does not include taking wild (or any other kind) of guesses nor simply making up 'facts'" (ECF No. 13 at 53); (4) the ALJ "does not get to play doctor herself and simply make up 'evidence' as she did here essentially right out of thin air" (ECF No. 13 at 60); (5) the ALJ's "comments about Plaintiff's 'activities' are grossly unprofessional not to mention simply absurd" (ECF No. 13 at 65); (6) "the record is devoid of any qualifications of the [vocational expert] to offer any [] opinion" (ECF No. 13 at 71); and (7) "that unlike a private disability insurance carrier, this Court cannot order Defendant to write a seven figure check to Plaintiff for Defendant's unquestionable bad faith in processing this claim" (ECF No. 15 at 35).

medically unnecessary treatment (ECF No. 13 at 67-68); (7) the ALJ erred in determining that medical treatment needed was available during non-work hours (ECF No. 13 at 69); and (8) the number of jobs available is trivial as determined by the vocational expert given Plaintiff's RFC, age, education, and work experience (ECF No. 13 at 70-73).

Defendant, properly, sorts Plaintiff's issues into three categories: (1) the ALJ did not provide Plaintiff with a fair and impartial hearing; (2) the ALJ erred in finding Plaintiff retained the residual functional capacity to perform a range of light work; and (3) the ALJ erred by finding 325,000 jobs in the national economy was a significant number. (ECF No. 14 at 1.)

For the below stated reasons, because the Court finds that the ALJ committed legal error due to the absence of substantial evidence supporting, in part, the ALJ's RFC determination, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). With the exception noted in the footnote, the Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered[7]. The Court does not intend by the opinion

---

[7] The ALJ determined that 325,000 jobs in the national economy were available to Plaintiff based upon the RFC and the vocational expert's testimony. (Tr. 85-86.) Plaintiff argues that Defendant failed to carry its Step 5 burden as this number of jobs is too "trivial" to constitute a "significant" number of jobs pursuant to 42 U.S.C. § 423(d)(2)(A). (ECF No. 13 at 70-73.) The Court disagrees. *See Botello v. Astrue*, 376 F. App'x 847, 851 (10th Cir. 2010) (unpublished) (67,250 jobs in the national economy is significant); *see also Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (11,000 jobs in the national economy was substantial evidence to support a determination of nondisabled); *see also De La Cruz v. Colvin*, Case No. 12-CV-2385-WJM, 2013 WL 5812551, at *4 (D. Colo. Oct. 29, 2013) (150,000 jobs in the national economy is significant).

to suggest the result that should be reached on remand; rather, the Court encourages the parties as well as the ALJ to consider all of the evidence and the issues anew.

> A. **The ALJ Committed Reversible Error By Failing to Deduce Substantial Evidence with Respect to Plaintiff's RFC as it Pertains to Her Migraines/Syncopal Episodes**

In fashioning an appropriate RFC based upon allegations of disabling pain, the "claimant must prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Hamlin v. Barnhart*, 365 F.3d at 1208, 1220 (10th Cir. 2004) (citation omitted). On April 9, 2012, Plaintiff was treated at the North Hills Hospital-Emergency Department for a single syncopal episode. (Tr. 673-79.) Although Plaintiff provided her history of the present illness (Tr. 673) and the treating physician found Plaintiff to be "alert" and in "no acute distress" (Tr. 673), the treating physician diagnosed Plaintiff with a "syncope" and a "migraine headache." (Tr. 675.)[8] Further, Susan Imke, FNP, diagnosed Plaintiff with syncope and migraine on August 23, 2012. (Tr. 553-56.) Because Plaintiff has shown a pain-producing impairment by objective medical evidence, she must then "show there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective allegations of pain; and . . . if so, whether, considering all the evidence, both objective and subjective, [the] [c]laimant's pain is in fact disabling." *Hamlin*, 365 F.3d at 1220 (internal quotation and citation omitted). In this matter, Plaintiff testified that her migraines cause her to become "unconscious." (Tr. 99.) Further, Dr. Boggaram found that Plaintiff's headaches will cause her to take "unscheduled breaks during an 8 hour working day" that necessitate her lying down or sitting quietly for several hours at a time before she may return to work. (Tr. 712.)

---

[8] In this regard, Plaintiff incorrectly cites to the record evidence. Plaintiff argues that "she [was] still unconscious" at the time of this examination. (ECF No. 15 at 18-19 (citing Tr. 380).) But this "still unconscious" statement is in the "history" section of the medical document and the "patient," *i.e.*, Plaintiff, was the historian. (Tr. 380.) Rather, the physician's examination revealed Plaintiff to be "alert" and in "no acute distress." (Tr. 380, *see* 383, *see* 384.)

12

Thus, the ALJ correctly determined[9] that Plaintiff's migraines with syncopal episodes are severe impairments based upon a lack of contradictory evidence in the record. (Tr. 70.)

Plaintiff argues, in part, that due to her migraines—which cause syncopal episodes—the ALJ's RFC determination lacks substantial evidence. (*See* ECF No. 13 at 56-58.) Specifically, Plaintiff supports her argument by relying upon Dr. Boggaram's residual functional capacity opinion as indicated previously. (Tr. 709-13.) The ALJ afforded Dr. Boggaram's opinion little weight. (Tr. 79.) The ALJ found Plaintiff's subjective complaints of pain, *i.e.*, "blackouts" during "syncopal episodes" not credible. (Tr. 83.) The record, however, contains no other opinion as to how Plaintiff's migraines—which cause syncopal episodes—would impact Plaintiff's ability to sustain an eight hour workday. (*See generally* Tr.) The ALJ attempted to account for Plaintiff's syncopal episodes by "limit[ing] [Plaintiff] to jobs not exposing her to common workplace hazards such as heights, dangerous machines or driving." (Tr. 84.) The ALJ supported his RFC determination with respect to Plaintiff's migraines/syncopal episodes by finding that "[t]here is [] no evidence that *other* treating or examining sources have reported functional limitations during episodes in which the claimant has alleged she was having a headache, and there is no report from any layperson suggesting that symptoms of severe headaches or any related functional limitations have been observed." (Tr. 78 (emphasis added).) The Tenth Circuit, however, has held that "[t]he absence of [such] evidence is not evidence." *Hamlin*, 365 F.3d at 1223 (alterations in original) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).

---

[9] The ALJ's ruling found that Plaintiff's "migraine headaches *with complaints* of syncopal episodes" to be a severe impairment. (Tr. 70 (emphasis added).) The Court discerns these as two separate impairments as a "complaint" cannot be a severe impairment. If "syncope" is not a severe impairment, then the ALJ should so state upon remand at Step 2 in the disability analysis and provide appropriate reasoning.

In its current form, the ALJ's RFC determination lacks substantial evidence with respect to the limitations or lack of limitations flowing from what the ALJ determined to be a severe impairment—migraine headaches with complaints of syncopal episodes. *See Hamlin*, 365 F.3d at 1214 (holding that "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it") (alteration in original and citation omitted), 1223 (citation omitted). The ALJ's RFC determination fails to address the frequency and severity of the headaches other than through an observation of the lack of evidence (Tr. 78). The Court recognizes that the Tenth Circuit has held that there is no requirement for a direct correspondence between an RFC finding and a specific medical opinion on a functional capacity question. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). But the ALJ's RFC assessment "must include a narrative discussion describing how the *evidence supports*" his migraine and syncopal conclusion citing specific medical facts and nonmedical evidence. *Guana v. Astrue*, Case No. 11-CV-02781-LTB, 2013 WL 316022, at *6 (D. Colo. Jan. 28, 2013) (emphasis added) (citing SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). As stated previously, lack of evidence is not evidence.

Because the ALJ's residual functional capacity restriction lacks substantial evidence as to Plaintiff's migraines with syncopal episodes, the Court remands so that the ALJ can explain the evidentiary support for his RFC determination. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *see also Thompson*, 987 F.2d at 1490.

## IV.  CONCLUSION

Based on the foregoing, the Court:

(1)  VACATES Defendant's denial of disability insurance benefits and supplemental security income;

(2)  VACATES the in-court hearing set for August 31, 2015; and

(3)  REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 5th day of August, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

15